IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CATHERINE D. TARQUINI                    :

                                         :

    vs.                                  CIVIL ACTION NO. JKB-05-3292

                                         :

SUPERIOR PRODUCTS, INC., ET AL. :

## MEMORANDUM

Pending and ready for disposition is defendants' motion for summary judgment (Paper No. 47).  The motion has been fully briefed and no hearing is necessary.  Local Rule 105.6.  For the reasons set forth below, the motion for summary judgment will be granted in part and denied in part.

### I. Background

Catherine Tarquini was a sales representative for Superior Products, Inc.,[1] primarily a wholesaler of flooring products, in 1996 and 1997.  She resigned, was rehired and worked again for the company from April 1998 until mid-September of 2003, when she was discharged.  This suit was filed in November 2005 in the Circuit Court for Baltimore County and was removed to this Court in December 2005.  The causes of action alleged in the complaint include wrongful discharge; violation of federal, Maryland and

---

[1] Subsequent to Ms. Tarquini's employment, Superior was purchased by SPI Floor LLC.

Virginia equal pay acts; violation of the Maryland Wage Payment Collection Act; breach of contract; violation of Title VII of the Civil Rights Act of 1964, including disparate treatment, sexually hostile environment and retaliation claims; and violation of the Americans with Disabilities Act.

## II. *Standard of Review*

Generally, an award of summary judgment is proper in federal cases when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate the absence of any genuine issue of material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party. *Ross v. Communications Satellite Corp.*, 759 F.2d 355 (4th Cir. 1985).

## III. *Analysis*

### A. *Title VII-Hostile Work Environment*

Defendants argue first that plaintiff's allegation of a sexually hostile work environment is barred by limitations. Under Title VII, a requisite to filing suit is the prior filing of an

2

administrative complaint of employment discrimination with the Equal Employment Opportunity Commission (EEOC) no more than 300 days after the alleged unlawful employment practice. *See,* 42 U.S.C. §2000-5(e)(1); *see, National Rail Passenger Corp. v. Morgan,* 536 U.S. 101 (2002); *see, Gilliam v. South Carolina Dept. of Juvenile Justice,* No. 05-1995, slip op., 2007 WL 92900 (4th Cir. Jan. 16, 2007). Under the "continuing violation" doctrine, acts having occurred outside the limitation period can be brought in to support a claim of hostile work environment "so long as an act contributing to that hostile environment takes place within the statutory time period." *Morgan,* 536 U.S. at 105. Defendants note that Ms. Tarquini has asserted that she sent to the EEOC a completed questionnaire and a packet of information on July 8, 2004, and posit that if the most favorable position to her in regard to a date of filing is adopted, the 300-day limitations period would have begun September 12, 2003. (Memorandum in Support of Defendants' Motion for Summary Judgment, P. 15). Defendants suggest that Ms. Tarquini did not interact with any of the defendant company's personnel who are alleged to have engaged in "bad behavior" toward her on or after September 12, 2003. *Id.* As it turns out, however, the record contains a letter dated September 12, 2003, from an attorney representing Ms. Tarquini, Annette Kay Rubin, to Larry Wolf, counsel for the defendants.

3

(Plaintiff's Opposition to Motion for Summary Judgment, Exhib. 12).

The letter includes the following:

> . . . This disparity in the treatment between males and
> females is consistent with Ms. Tarquini's experience at
> the company: For example Mr. Waldman's comment to her "if
> you sleep with me you could have any job in the place,"
> and Mr. Connely [sic] comment to a male co-worker of hers
> asking in reference to Ms. Tarquini, "does she spit or
> swallow."

This language, arguably, is a complaint alleging a sexually hostile
work environment.   Five days later, on September 17, 2003, the
president of the defendant company sent a letter to Ms. Tarquini
terminating her employment effective the following day, ostensibly
because she was unable to perform her job. (Plaintiff's Opposition
to Motion for Summary Judgment, Exhib. 13).  The question for the
Court, then, is whether purported retaliation for complaining about
a sexually hostile environment is "an act contributing to that
hostile environment." *Morgan, supra.*  The Court's view is that it
is such an act.  A termination that is in retaliation for a
complaint about a hostile work environment is itself an act within
the work environment that makes that environment "hostile" in this
Title VII context.  Accordingly, summary judgment on the ground
that plaintiff's sexually hostile environment claim is barred by
limitations will be DENIED.

### B. Title VII and Equal Pay Act-Gender-based Wage Bias

The defendants argue that Ms. Tarquini's claims pursuant to

4

Title VII and the Equal Pay Act alleging gender-based wage discrimination are time-barred.  Once again, the battleground between the parties, at least as to the Title VII claim and the claim of willful violation of the Equal Pay Act, is the theory of continuing violation and its applicability in the context of gender-based wage claims.  Defendants posit that the Supreme Court "expressly rejected any argument that any employment action other than a hostile environment claim could be considered a 'continuing violation.'" (Memorandum in Support of Defendants' Motion for Summary Judgment, P. 17, citing *Morgan, supra,* 536 U.S. at 120). That reading of *Morgan,* in the eyes of this Court, goes too far. Beyond doubt, *Morgan* sets hostile environment claims apart as a horse of a different color.  "Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct." *Morgan,* 536 U.S. at 115.  However, the Supreme Court delineates its vision of the type of conduct within the genre of discrete acts:  "Discrete acts such as termination, failure to promote, denial of transfer or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a 'separate employment practice.'"  *Morgan,* 536 U.S. at 114.  The Supreme Court did not expressly find that only hostile environment claims can be considered continuing violations.  Rather, an exception to

5

limitations was made for those claims that by their nature involve repeated conduct.  Gender-based wage claims may or may not be an apt example of such claims.  They were not directly addressed in *Morgan* and, as defendant points out in a footnote, there is a division among the circuits on the issue and the Supreme Court has granted certiorari in a case from the 11th Circuit in order to consider it.  Ms. Tarquini has cited two Fourth Circuit precedents--*Brinkley-Obu v. Hughes Training, Inc.,* 36 F.3d 336 (4th Cir. 1994) and *Marshall v. Manville Sales Corp.,* 6 F.3d 229 (4th Cir. 1993)--in support of the proposition that continuing violation analysis is applicable to gender-based wage claims.  *Morgan* notwithstanding, the Fourth Circuit has not overruled *Brinkley-Obu* or *Marshall,* and this Court is bound to follow those precedents.  Accordingly, summary judgment as to plaintiff's claims for Title VII gender-based pay discrimination and willful Equal Pay Act violation on the ground that these claims are time-barred will be DENIED.

Absent willful violation of the Equal Pay Act, the limitation period for filing claims under that act is two years after the cause of action accrues.  Willful violations, on the other hand, are subject to a three-year limitations period.  *See,* 29 U.S.C. § 255(a).  Inasmuch as Ms. Tarquini did not file suit until November 2005, more than two years subsequent to her discharge, any claims

6

of non-willful Equal Pay Act violation are time-barred.

Defendant argues, moreover, that Ms. Tarquini has failed to articulate any evidence to demonstrate a willful violation that would justify a three-year limitation period, citing *Salmons v. Dollar General Store,* 989 F.Supp. 730 (D. Md. 1996), *aff'd.* 133 F.3d 916 (4th Cir. 1998) for the proposition that unsupported allegations of an employer's willfulness will not preclude summary judgment. In *Salmons,* Judge Davis distinguished *Cacchione v. Erie Technological Products, Inc.,* 526 F. Supp 272 (W.D. Pa. 1981), on the facts, *i.e.,* the plaintiff in *Salmons* failed to proffer any evidence in support of the allegations of willfulness.[2]  *Salmons,* in turn, is distinguishable here.  Ms. Tarquini avers that when she complained that her accounts were being wrongfully transferred to a male co-worker, management sought to justify the transfers on the ground that she had a husband and that her co-worker had a wife and children.  (Plaintiff's Response to Defendant Superior Products, Inc.'s Interrogatories).  The Court finds that a rational jury could find from those statements that the defendant's disparate treatment in compensation of Ms. Tarquini was deliberate and was based upon gender.  Accordingly, summary judgment will be DENIED as to the

---

[2]*Cacchione,* upon which the plaintiff relies here, states the general rule that willfulness of an employer's action is an issue of fact reserved for the jury.

issue of willful violation of the Equal Pay Act.[3]

### C. Disability Discrimination

A claimant under the ADA must show in the first instance that she is a qualified individual with a disability. *See, Rohan v. Networks Presentations LLC,* 375 F.3d 266 (4th Cir. 2004). "Disability" is a term of art in ADA parlance. To make the required showing, a claimant must demonstrate that she has an impairment or impairments that substantially limit a major life activity. A major life activity is a normal activity of living, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, reproducing and working. *See, Toyota Motor Mgf. Kentucky, Inc. v. Williams,* 534 U.S. 184 (2002). A claimant may prove that she is substantially limited in a major life activity by showing that she was significantly restricted as to the condition, manner or duration under which she could perform the

---

[3]The defendant engages in some argument regarding plaintiff's Title VII and Equal Pay Act claims in which it seeks to apply burden-shifting analyses reserved for cases in which the claimant must rely upon circumstantial evidence. In this case, however, there is direct evidence of gender bias in the payment of wages -- the statements attributed to management in response to Ms. Tarquini's complaints about her accounts being diverted to a male co-worker -- that render resort to the burden-shifting analyses inappropriate. Further, the defendant posits that it should be awarded summary judgment as to the Maryland equal pay statute for the same reason that it is entitled to judgment on the EPA. Inasmuch as the Court has denied summary judgment as to those claims, the claims under the state act are DENIED for the same reasons.

activity as compared to the average individual. *Id.*   Defendant
posits that the record does not demonstrate that Ms. Tarquini is
disabled within the meaning of the ADA. Ms. Tarquini, in response,
offers as evidence two brief letters from an orthopedic surgeon,
one dated December 1999 and the other April 2000, that set forth his
opinion that injuries sustained in a work accident (contusions to
the left shoulder and left foot), have reduced the amount of walking
and carrying that she was able to do "for a minimum of six months,
possibly on a permanent basis . . ."  (Plaintiff's Exhibits 7 and
16).  At deposition in July 2006, Ms. Tarquini testified in response
to a question regarding limitations caused by her injuries that she
is unable to participate in water and snow skiing or any high-impact
aerobic-type exercise. (Tarquini Deposition, p. 53).

> Q.   Other than your inability to participate in
> these  sporting  activities,  are  there  any  other
> limitations imposed by your injury, things you cannot do?
>
> A.   There's really nothing that I absolutely cannot
> do.  But in regards to lifting and carrying, I know that
> there is a weight that the doctor has said you should –
> you are doing damage if you lift this weight X repetitive
> times throughout the day every day.

(Tarquini Deposition, p. 55).

The issue of whether an ADA claimant has demonstrated a
disability within the meaning of the statute may be resolved by the
Court as a matter of law.   *See, Heiko v. Colombo Savings Bank,
F.S.B.,* 434 F.3d 249 (4th Cir. 2006).  As part of the threshold

showing required of an ADA claimant, she must show that her limitations are substantial, *i.e.,* considerable or to a large degree. "The word 'substantial' thus clearly precludes impairments that interfere only in a minor way with the performance of manual tasks from qualifying as disabilities." *Toyota,* 534 U.S. at 197. The qualifying terms in the statute "need to be interpreted strictly to create a demanding standard for qualifying as disabled . . ." *Id.* It is the view of this Court that the somewhat dated and inexplicit medical reports, coupled with recent testimony from the claimant herself, are insufficient to demonstrate that Ms. Tarquini has a disability under the ADA and, accordingly, summary judgment will be GRANTED to the defendant as to Ms. Tarquini's ADA claim.

### D. Retaliatory Discharge

Defendant posits that Ms. Tarquini fails to establish a *prima facie* case of retaliatory discharge.  The elements of a *prima facie* case of retaliatory discharge, as defendant states, are set forth in *Beall v. Abbott Laboratories,* 103 F.3d 614, 619 (4th Cir. 1997). Plaintiff must show that (1) she engaged in protected activity; (2) the employer acted adversely toward her; and (3) that the protected activity was causally connected to the adverse action.  *Id.*  In the absence of direct proof, plaintiff may rely upon the burden-shifting paradigm set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), wherein, after the plaintiff articulates a *prima facie* case,

the burden shifts to the employer to produce a legitimate non-discriminatory reason for the adverse action.   The burden then shifts back to the employee to show that the purported reason for the action was a pretext for retaliation and that discrimination was the real reason.  *Beall, supra.*   As noted above, former counsel for Ms. Tarquini sent a letter to counsel for the defendant dated September 12, 2003.  (Plaintiff's Opposition to Motion for Summary Judgment, Exhib. 12).   The letter sets forth a proposal wherein Ms. Tarquini would resign in return for severance pay of a sum equal to seven months of her base salary.   However, in addition to the language set forth in Section A above, the letter states:

> Ms. Tarquini also described to me what appears to be a fairly blatant example of disparate treatment, both on the basis of gender and on the basis of the company's perception of her as a person with a disability with in [sic] the meaning of the Americans with Disabilities Act.

> . . .

> Based on the conversations that I had with Ms. Tarquini so far, it does appear there is some basis to pursue legal action on her behalf.

> . . .

> Whether you choose to think of this as an inexpensive resolution to a potentially costly law suit, or simply a generous severance agreement for a departing employee, is your choice.

> I have, or course, advised my client to take some time away from the work place while you consider your response to this question.   Please consult with your client and give me your reply at your earliest possible convenience.   I look forward to hearing from you.

(Plaintiff's Opposition to Motion for Summary Judgment, Exhib. 12).

Again, as note above, Ms. Tarquini was discharged by a letter, dated five days later, that included the following language:

> In light of your recent phone call to me, concerning your inability to do your job, I have determined that it is necessary to put someone else in your position. Therefore, this letter is to advise you that you have been replaced effective September 18, 2003.

(Plaintiff's Opposition to Motion for Summary Judgment, Exhib. 13). Notably, the letter made no reference at all to the letter from Ms. Tarquini's counsel.

The Court finds that the letter from Ms. Tarquini's counsel is protected conduct under Title VII and that, obviously, the defendant took adverse employment action against her.   Moreover, the termination letter is an articulation by the defendant of a legitimate reason for her termination (a purported telephone call in which Ms. Tarquini stated that she was unable to perform her job).  However, Ms. Tarquini elicited testimony at deposition from Ron Conley, one of her co-workers, which contradicts the claim that the author of the termination letter, Bob Nichols, was acting in response to a telephone call from Ms. Tarquini and instead, if believed, shows that Mr. Nichols was acting in response to the letter from Ms. Tarquini's counsel.  (Conley Deposition, p. 211-216).  It is the view of the Court that Ms. Tarquini, through this testimony coupled with the timing of the letters, has carried her

burden of showing that the proffered reason for her discharge was a pretext for discrimination.   Summary judgment will be denied to the defendant as to Ms. Tarquini's retaliatory discharge claim.

### E. Breach of Contract

Defendant posits that Ms. Tarquini was an employee at will and, therefore, the terms of her employment could be unilaterally modified at any time by her employer.   It is, in fact, the well-established law of Maryland that an employee hired for an indefinite period is an at-will employee and it follows logically and has been held in some jurisdictions that the terms of an at-will employment contract can be changed unilaterally by the employer.   *See, Haselrig v. Public Storage, Inc.,* 585 A.2d 294 (Md. Ct. Spec. App. 1991); *Geary v. Telular Corp.,* 793 N.E.2d 128 (Ill. App. Ct. 2003).   There appears to be no contest here over the fact that Ms. Tarquini was at at-will employee--at least that assertion is not disputed in response to the dispositive motion.   The "employment contract" upon which Ms. Tarquini relies actually is a memorialization in the form of a letter dated April 13, 1998, to Ms. Tarquini from Edward J. Waldman which sets forth the terms of employment that Ms. Tarquini and Mr. Waldman earlier had discussed.   (Plaintiff's Opposition to Motion for Summary Judgment, Exhib. 6).   The itemized terms are, in part, quite specific.   They  specifically do not include a term of employment.   To state that Ms. Tarquini was an at-will employee and

that the employer had the right to unilaterally alter her terms of
employment, does not state, however, that the terms set forth in the
letter can be altered without reasonable notice.  Defendant does not
argue nor does it provide evidence of reasonable notice to Ms.
Tarquini that the terms under which she was working–such as the
payment of a percentage of sales when another employee is given part
of her territory-had been abrogated.  Notably, the letter provides
in its last term that the company would pay Ms. Tarquini eight weeks
of severance pay in the event that she was terminated for reasons
other than gross negligence or gross dereliction of duty, which term
could be construed as a limitation on the discretion of the employer
to terminate the employee.  *See, Hasselrig,* 585 A.2d at 122.
Defendant makes the point that an at-will employee continuing in
employment after a change in conditions of employment is deemed to
have accepted the change, citing *Castiglione v. Johns Hopkins
Hospital,* 517 A.2d 785 (Md. Ct. Spec. App. 1986).  It follows
relentlessly then that an at-will employee must have been given
unequivocal notice of such change.  *See, Hathaway v. General Mills,
Inc.,* 711 S.W..2d 227 (Tex. 1986).  It is not at all clear here that
Ms. Tarquini had notice of any changes to her conditions of
employment and summary judgment will be denied to defendant on the
breach of contract issue.

### F. *Maryland Wage Payment And Collection Act*

Defendant's posits that the only potential claim that Ms. Tarquini can articulate under the Maryland Wage Payment and Collection Act is one for severance pay.  This argument apparently is grounded on the supposition that the other terms of the employment agreement referenced above were nugatory because the defendant had the right to change them unilaterally, given Ms. Tarquini's status as an at-will employee.  However, as noted directly above, whether the terms of Ms. Tarquini's employment were abrogated through sufficient notice is an issue that cannot be decided on the current evidence and, therefore, Ms. Tarquini's viable claims remain somewhat broader than supposed by the defendant.  Summary judgment will be denied to the defendant on the Maryland Wage Payment and Collection Act claim.

### F. *Abusive Discharge*

Ms. Tarquini claims that she was wrongly discharged for asserting her rights under the wage payment collection statutes of Maryland and Virginia.  "To assert a cause of action for abusive discharge, the employee must allege (1) discharge; (2) in retaliation for refusing to violate some clear mandate of public policy that is reflected in a statute but is not vindicated by that statute or elsewhere; and (3) a causal nexus between the public policy violation and the decision to discharge."  *Magee v.*

15

*Dansources Technical Services, Inc.,* 769 A.2d 231, 254 (Md. Ct. Spec. App. 2001)(citing, *Insignia Residential Corp. v. Ashton,* 755 A.2d 1080 (Md. 2000)).

The defendant contends that the Maryland Wage Payment and Collection Act cannot be found to reflect a clear mandate of public policy upon which a claim of abusive discharge can be predicated because there is no specific provision in that act prohibiting an employer from taking adverse action against an employee because she made a claim under the act.   The Court believes that analysis to be nearly exactly backward.

The tort of abusive discharge is a judicially created exception limiting an employer's discretion to fire an at-will employee. Maryland cases that have developed the law in this area (*Adler v. American Standard Corp.,* 432 A.2d 464(Md. 1981); *Makovi v. Sherwin-Williams,* 561 A.2d 179 (Md. 1989); *Watson v. Peoples Sec. Life Ins. Co.,* 588 A.2d 760 (Md. 1991); and *Insignia[4], supra)* have made it clear that the exception *does not* lie when the predicate statute provides its own remedy for the violation.   The issue here is not whether the state wage collection acts sought to be relied upon by the plaintiff as predicates for her abusive discharge claim embody

_____

[4]*Insignia*, notably, held that the Maryland criminal prostitution statute provided the public policy predicate in a case in which an employer purportedly discharged an at-will employee because she refused to sleep with her employer as a *quid pro quo* for promotion.

a clear statement of public policy -- obviously they do so.  Rather, as the Maryland Court of Appeals made abundantly clear through its exhaustive analysis in *Makovi,* the issue here is whether the predicate statutes contain their own remedies for violation -- again, obviously they do so.[5]  Consequently, an at-will employee terminated for asserting her rights under those statutes may not bring an action for abusive discharge because the judicial exception to the at-will employment doctrine was created to generate a remedy only where none exists.  The majority in *Makovi* specifically rejected the broader contrary view set forth in the dissent in that case.  Accordingly, summary judgment will be awarded to the defendant as to the claim of abusive discharge.


Dated this ___12th___ day of March, 2007.


                    BY THE COURT:


                    _____
                    James K. Bredar
                    United States Magistrate Judge


---

[5] *See, eg.* Md. Code Ann. Lab. & Empl. 3-507.1